CHARLES D. GIANETTI *v.* GLENN
SIGLINGER ET AL.
(SC 17586)

Borden, Norcott, Palmer, Vertefeuille and Sullivan, Js.

Argued April 18—officially released July 11, 2006

*Charles D. Gianetti,* pro se, the appellant (plaintiff).

*Patrick D. Skuret,* with whom, on the brief, was *Daniel D. Skuret,* for the appellee (defendant Foster M. Young).

*Elaine M. Skoronski,* for the appellees (named defendant et al.).

*Richard Blumenthal,* attorney general, and *Linda A. Russo, Richard M. Porter* and *Arnold I. Menchel,* assistant attorneys general, filed a brief for the office of the attorney general as amicus curiae.

*Opinion*

PER CURIAM. This appeal[1] arises out of an action brought by the plaintiff, Charles D. Gianetti, a physician, against the defendants, Glenn Siglinger and Laura Siglinger (Siglingers) and Foster M. Young, an attorney for the Siglingers, in which the plaintiff sought moneys that he claimed were due to him as compensation for medical services that he had provided to Allison Sig-

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

linger, the minor daughter of the Siglingers. The defendants filed counterclaims against the plaintiff alleging violations of General Statutes § 42-110b[2] of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. After trial to the court, the trial court rendered judgment for the defendants on both the plaintiff's complaint and the defendants' counterclaims. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On December 30, 1995, Allison Siglinger was involved in an automobile accident. As a result of this accident, the plaintiff, a plastic surgeon, provided services to Allison twice: at the emergency room of Bridgeport Hospital on the day of the accident; and during an office visit on January 9, 1996.

At the time that treatment was rendered, both the Siglingers and the plaintiff had a relationship with Physicians Health Services of Connecticut, Inc. (Physicians Health), a health maintenance organization.[3] The Siglingers were subscribers to the prepaid health care program issued by Physicians Health. Pursuant to their agreement, Physicians Health provided certain covered services in return for specified periodic payments. The

[2] General Statutes § 42-110b provides in relevant part: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . .

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

[3] "Beginning in the late 1960's, insurers and others developed new models for health-care delivery, including [health maintenance organizations]. . . . The defining feature of [a health maintenance organization] is receipt of a fixed fee for each patient enrolled under the terms of a contract to provide specified health care if needed. The [health maintenance organization] thus assumes the financial risk of providing the benefits promised: if a participant never gets sick, the [health maintenance organization] keeps the money regardless, and if a participant becomes expensively ill, the [health maintenance organization] is responsible for the treatment agreed upon even if its cost exceeds the participant's premiums." (Citation omitted.) *Pegram* v. *Herdrich*, 530 U.S. 211, 218–19, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000).

agreement explicitly provided that it was "not antici-pated that a [m]ember [would] make payments other than any applicable [c]opayment to any person or insti-tution providing benefits under this [c]ontract."

The plaintiff's relationship with Physicians Health is more complicated. From 1977 through 1998, the plaintiff was a provider of Physicians Health services as a mem-ber of the Greater Bridgeport Individual Practice Asso-ciation, Inc. (practice association), or its predecessors.[4] This relationship was reflected in a series of agreements between the plaintiff and the practice association, all of which contain certain basic tenets of the arrangement.[5] Under the agreements, the plaintiff, as a participating physician, was obligated to provide or arrange for the covered services designated by Physicians Health sub-

[4] The practice association was an organization that credentialed and selected physicians to provide services to Physicians Health subscribers. Its members were the exclusive providers of such covered services to Physi-cians Health subscribers in the greater Bridgeport area.

[5] In 1977, the plaintiff signed a participating physician agreement that provided he would bill the health plan his usual charges for services rendered to subscribers and the amount of compensation to be paid by the health plan would be determined by the association's board of trustees. This agreement further provided that "at no time shall [the plaintiff] seek compensation from [subscribers] for such services except for the nominal co-payments . . . ." The agreement was for a one year term with automatic renewal absent termination by either party with a ninety day notice.

In 1988, the practice association revised the arrangement to comply with federal laws and regulations. The new compensation clause provided that the " '[p]hysician shall look only to [the practice association] for compensa-tion for [c]overed [s]ervices and in no event, including, but not limited to non-payment by the [practice association, Physicians Health or practice association] insolvency, or breach of this [a]greement, shall [p]hysician bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against [subscribers], other than [Physicians Health] acting on their behalf for services provided pursuant to [the agreement between the practice association and the physician].' "

The arrangement also was revised in 1992 when the plaintiff signed a physician agreement providing, inter alia, more detailed compensation provi-sions for payment by Physicians Health. The agreement again was effective for a period of one year and continued in effect unless terminated by either party on ninety days notice. The plaintiff never filed a notice of termination.

scriber contracts and to submit bills for those services to Physicians Health. Physicians Health would then compensate the plaintiff for the medical services he provided to Physicians Health subscribers in accord with a fee schedule determined by Physicians Health. The plaintiff was not to bill Physicians Health subscribers for any amount above a nominal, predetermined copayment. Specifically, under the agreement in effect at the time the plaintiff provided services to Allison Siglinger, the plaintiff "agree[d] that in no event . . . shall [p]hysician bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against [m]embers or persons . . . acting on their behalf for services provided pursuant to this [a]greement." Thus, "balance billing," which is an attempt by a physician to collect the balance due from a subscriber over and above the amount that Physicians Health determined to be reasonable for covered services, was clearly prohibited under the arrangement.

The parameters of this arrangement were a matter of some contention between the plaintiff and the practice association up to and during the time that the plaintiff provided services to Allison Siglinger. Specifically, on more than one occasion, the plaintiff had billed Physicians Health subscribers directly for certain services that he had provided to them. The plaintiff subsequently sought payment through litigation. See, e.g., *Gianetti* v. *Fischetti*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV-98-0352010S (February 3, 2000), aff'd, 64 Conn. App. 902, 777 A.2d 213 (2001); *Gianetti* v. *Mulroney*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV-91-0290495S (July 10, 1995). In a September 6, 1991 letter, the practice association informed the plaintiff that the board of directors had determined that the plaintiff had a pattern of not fulfilling his contractual obligations to the prac-

tice association with respect to billing issues. The letter warned that another occurrence of certain specified events, including balance billing of plan subscribers, would result in termination of his participation with Physicians Health. In letters dated February 14, 1995, and March 6, 1995, the practice association notified the plaintiff that it intended to terminate him as a Physicians Health provider due to his balance billing of a plan subscriber. The board eventually withdrew the termination notice after the plaintiff obtained legal representation and contested the action.

It is undisputed that the plaintiff did not inform the Siglingers at the time of treatment that he might claim compensation directly from them for his services, nor did he inform them of his disagreements with Physicians Health and other subscribers regarding compensation beyond that paid by Physicians Health. Indeed, the plaintiff submitted a request for payment to Physicians Health for the services that he performed for Allison Siglinger and received $1888.80 in July, 1996. The plaintiff requested a reconsideration of the amount paid to him, and by December, 1996, Physicians Health had adjusted his compensation for the care of Allison to $1980.80. The plaintiff has since filed an action against Physicians Health in small claims court, alleging "[i]ncorrect payment of medical services rendered" and seeking an additional $481.60 in compensation.

During this time frame, Glenn Siglinger, on behalf of Allison Siglinger, brought a personal injury action arising out of the automobile accident and Young acted as his attorney. In an effort to obtain records from the plaintiff pertaining to the treatment of Allison, Young sent the plaintiff a document entitled "authorization for record request and irrevocable lien."[6] In October, 1996,

---

[6] This document, dated January 9, 1996, and signed by Glenn Siglinger as the father and guardian of Allison Siglinger, provided in relevant part: "Permission is hereby granted to my attorneys . . . to obtain copies of my records, bills, and all information pertaining to the same." It further provided

the plaintiff sent Young two bills for the services provided: one detailing services provided and reflecting a total charge of $6385; and one reflecting a balance due of $4496.20. Young determined that the plaintiff, as a Physicians Health provider, was not permitted to bill the Physicians Health subscribers such as the Siglingers for the balance of his bill. Young, therefore, put the balance requested into escrow. The plaintiff sent Young another letter dated April 1, 1997, stating his position that the document entitled "authorization for record request and irrevocable lien" entitled him to payment of the balance that he had claimed due in his October, 1996 letter. Thereafter, in order to facilitate the settlement of the personal injury action, Glenn Siglinger sought appointment as guardian of Allison's estate, and the plaintiff, in an effort to collect the moneys he claimed due, contested the appointment.

The plaintiff then filed the present action, seeking recovery from the Siglingers under the theories of breach of contract, quantum meruit and unjust enrichment, and from Young under an unjust enrichment theory. The Siglingers filed an answer denying the allegations and alleging the following six special defenses: breach of contract; waiver; satisfaction; negligent provision of services; duress; and violation of General Statutes § 20-7f.[7] They also filed a counterclaim alleging unfair trade practices in violation of § 42-110b. Similarly, Young filed an answer denying the allegation

that Glenn Siglinger authorized and directed Young "to pay directly to any doctor or medical provider such sums as may be due and owing for professional services rendered . . . by reason of this accident and to withhold such sums from any settlement, judgment or verdict as may be necessary to protect said doctor or medical provider. This is an irrevocable lien on my case in favor of said doctor or medical provider."

[7] General Statutes § 20-7f (b) provides: "It shall be an unfair trade practice in violation of [CUTPA] for any health care provider to request payment from an enrollee, other than a copayment or deductible, for medical services covered under a managed care plan."

against him and alleging as special defenses that: any money due the plaintiff is owed by his codefendants; Physicians Health satisfied the debt; and the plaintiff violated General Statutes § 38a-193 (c).[8] Young also filed a counterclaim, alleging unfair trade practices in violation of § 42-110b, as well as an unfair insurance law practice in violation of § 20-7f and violation of § 38a-193 (c).

During a three day hearing, the trial court accepted evidence and heard testimony from the plaintiff, Young, Glenn Siglinger, and Michael Lee. Lee was a founding member of Physicians Health and, at various times, served as the chairman and vice chairman of the practice association. He testified regarding the operation of Physicians Health and the practice association, as well as the relationship of those organizations with the plaintiff.

The trial court rendered judgment in favor of the defendants on the complaint. The trial court also rendered judgment for the defendants on their counterclaims for CUTPA violations. In so holding, the trial court determined that the 1992 agreement between the

---

[8] General Statutes § 38a-193 (c) provides: "(1) Every contract between a health care center and a participating provider of health care services shall be in writing and shall set forth that in the event the health care center fails to pay for health care services as set forth in the contract, the subscriber or enrollee shall not be liable to the provider for any sums owed by the health care center. (2) In the event that the participating provider contract has not been reduced to writing as required by this subsection or that the contract fails to contain the required prohibition, the participating provider shall not collect or attempt to collect from the subscriber or enrollee sums owed by the health care center. (3) No participating provider, or agent, trustee or assignee thereof, may: (A) Maintain any action at law against a subscriber or enrollee to collect sums owed by the health care center; or (B) request payment from a subscriber or enrollee for such sums. For purposes of this subdivision 'request payment' includes, but is not limited to, submitting a bill for services not actually owed or submitting for such services an invoice or other communication detailing the cost of the services that is not clearly marked with the phrase 'THIS IS NOT A BILL'."

plaintiff and the practice association was in force at the time that the plaintiff provided the relevant services. The court also concluded that this agreement prohibited the plaintiff from billing the Siglingers for the balance that he claimed was due after Physicians Health had paid him. Finally, the trial court noted other litigation arising out of the plaintiff's practice of balance billing and concluded that the plaintiff was well aware that the practice was prohibited through court decisions and statutes. The court therefore ruled in favor of the defendants on their CUTPA counterclaims, awarding $25,656.30 to Young, and $39,970 to the Siglingers in actual and punitive damages. The trial court also ordered that its memorandum of decision be filed in all pending cases in which the plaintiff is a pro se plaintiff.

On appeal, the plaintiff raises fourteen issues.[9] After thoroughly examining the record and considering the

---

[9] Specifically, the plaintiff contends that the trial court improperly: (1) overruled his objection to the introduction of his agreement with the practice association because there was no privity of contract between the defendants and the practice association; (2) concluded that the defendants had not waived any rights under the contract between the plaintiff and the practice association by providing the plaintiff with the document entitled "authorization for record request and irrevocable lien"; (3) relied on two trial court decisions, *Gianetti* v. *Fischetti*, supra, Superior Court, Docket No. CV-98-0352010S, and *Gianetti* v. *Mulroney*, supra, Superior Court, Docket No. CV-91-0290495S; (4) concluded that the plaintiff had violated CUTPA "both in instituting the present action and continuing to maintain the present action"; (5) concluded that § 20-7f (b) was applicable although it was "not in effect" at the time the plaintiff's claims arose; (6) concluded that Young's CUTPA counterclaim was not precluded by the statute of limitations; (7) failed to consider other trial court decisions in which the plaintiff had been awarded money from other Physicians Health subscribers; (8) failed to consider a trial court decision "involving [Physicians Health] patients where [the plaintiff] was not a party and the court ruled that [the plaintiff] should receive payment in addition to the [Physicians Health] payment"; (9) ordered its memorandum of decision to be distributed to all defendants and "place[d] a copy in the file of all pending cases where [the plaintiff also is acting as] a pro se plaintiff, irrespective of whether those cases involved issues similar to this matter"; (10) awarded attorney's fees to the defendants; (11) awarded punitive damages to the defendants; (12) failed to find that the defendants' submission to an insurance company of the plaintiff's statement, which they

briefs and oral arguments of the parties, we conclude that the plaintiff's claims have no merit. The trial court's findings are amply supported by the record and its legal conclusions are sound.

The judgment is affirmed.

had no intention of paying, violated the provisions of the Health Insurance Fraud Act, General Statutes § 53-440 et seq.; (13) applied § 38a-193 (c) (1); and (14) failed to find for the plaintiff on all counts of the complaint against the defendants.

